565 P.2d 1347 (1977)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
William Earl DAVIS, Defendant-Appellant.
No. 76-083.
Colorado Court of Appeals, Div. I.
February 24, 1977.
Rehearing Denied April 14, 1977.
*1348 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., James S. Russell, Asst. Attys. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy State Public Defender, Lee Belstock, Deputy State Public Defender, Denver, for defendant-appellant.
ENOCH, Judge.
Defendant William Earl Davis appeals from his conviction by a jury of two counts of aggravated robbery. We affirm.
On August 29, 1975, two soldiers hitchhiking in Colorado Springs were picked up by five persons in a car and driven to a park area where the soldier in the front seat was robbed at gunpoint and pistol-whipped by the driver, and the soldier in the back seat was robbed at knifepoint.
Detective Shull of the Colorado Springs police department subsequently received an anonymous telephone call implicating defendant in the robbery and beating. Shull's own investigation revealed that a mug shot of defendant on file matched the description, given to him by the victim, of the assailant with the gun. Also, a car matching the description of that given by the victim was found to be registered to defendant. Based on this information, Shull issued a pickup order on the afternoon of Sunday, August 31, 1975, for both defendant and his car.
Shortly after 5 p. m. on that same afternoon, Officers Finn and Manczur, while on patrol, observed a car parked in a service station lot with defendant in the driver's seat, another man in the front passenger seat, and a woman and baby in the back seat. Officer Finn was not positive, but it was his recollection that the service station was not open for business. At this time, these two officers had no knowledge of the pickup order or the offense which had occurred. Finn testified that he approached the car to talk with the occupants because he thought maybe they had car trouble.
*1349 He further testified that he asked defendant for his driver's license and car registration. Defendant answered that he did not have his license with him, but did state his name and did produce the registration card. Finn wrote down the driver's name and returned to his vehicle and radioed in the name and license number to the dispatcher. The dispatcher informed Finn of the pickup order on the car and defendant, and defendant and his front seat passenger were immediately arrested.
The next day, after one of the victims had identified defendant from a photo lineup, defendant was interrogated by Detective Shull, and at that time defendant made certain self-incriminating statements.

I.
Defendant asserts that his entire statement made after his arrest should have been suppressed because his initial arrest was illegal. This argument raises an important question as to the limits of the authority of a police officer to approach a person seated in the driver's seat of a stopped vehicle and seek identification from him when the officer does not have information constituting probable cause to arrest that person.
The right of an officer to stop a person, and even to conduct a pat-down search for weapons when that officer has a reasonable suspicion not amounting to probable cause that the person might be involved in criminal activity was recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. In that case, after declaring that the reasonableness of a search or seizure was governed by a balancing of the need to search or seize against the invasion which the search or seizure entails, the court approved the patdown search which had been conducted, even though it recognized that the physical seizure and search was a substantial intrusion on the sanctity of the person.
The Supreme Court expressly left open the question of the constitutional propriety of an investigative "seizure" upon less than probable cause for purposes of "detention" and/or interrogation. The court did observe, however, that not all personal intercourse between policemen and citizens involves a "seizure" of such citizens. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Terry v. Ohio, supra, at fn. 16.
In Colorado, certain conditions under which an officer can legally detain a person for questioning in the absence of probable cause to arrest were announced in Stone v. People, 174 Colo. 504, 485 P.2d 495, as follows: (1) The officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose.
Defendant cites Stone and the subsequent case of People v. McPherson, Colo., 550 P.2d 311, as determinative that his arrest was illegal because the officers did not have a reasonable suspicion that the defendant had committed or was about to commit a crime. If the reasons for the officers' approach to defendant's car had been based on an investigation of criminal activity, we might agree. However, that is not the case presented; rather, the evidence demonstrates that the officers approached the car to ascertain if the occupants were having car trouble.
It is clear that police officers perform many functions other than investigation of crime, such as controlling traffic, investigating accidents, rendering first aid to sick or injured persons, and aiding motorists whose cars are disabled. Interrogations arising out of such functions do not meet the first requirement of the Stone test, because there is no reasonable suspicion of criminal activity; nevertheless, it would be unreasonable to assert that the police cannot make reasonable inquiries of persons whom they encounter without suspicion of criminal activity.
*1350 The court in Stone expressly recognized that the rule enunciated therein was not exclusive, and that additional rules would be required as different fact situations were presented.
The first condition to be met in situations other than those which concern investigation of criminal activity is whether there is a bona fide reason, related to functions within the scope of the police officer's authority and duties, for the encounter of a party. See People v. De Bour, 40 N.Y.2d 210, 386 N.Y.S.2d 375, 352 N.E.2d 562. De Bour recognizes that contacts not based on suspicion of criminal activity are permissible when there is an articulable reason for the encounter. We find that decision persuasive, especially since De Bour arose in a jurisdiction which had previously promulgated the same standards as those adopted in Stone, supra, which cited, with approval, People v. Rivera, 14 N.Y.2d 441, 252 N.Y.S.2d 458, 201 N.E.2d 32.
To justify a contact, the officer must be able to point to specific and articulable facts which warranted the initial intrusion, and these facts are to be judged against an objective standard: Would the facts available to the officer at the moment of the encounter justify a man of reasonable caution in believing that the action taken was appropriate. Terry v. Ohio, supra.
Coupled with the finding that there was a valid reason for encountering a party, the specific purpose of the detention, and its character, must be reasonable in view of the reason for the encounter. In these latter two respects, the test is the same as that announced in Stone, supra. If all of these conditions are met, then there has been no unlawful violation of a person's Fourth Amendment rights and the detention should be upheld.
While the encounter here involved even less initial restraint than was present in Stone, we will assume that defendant did not feel free to leave as a result of a show of authority by the officer, and that there was therefore a "seizure" of defendant which made Fourth Amendment protections applicable. See Stone, supra.
Therefore, we must consider whether the officers' reason for approaching the car was permissible. We hold that it was. Offering assistance to motorists whose vehicles are disabled or appear to be disabled clearly falls within the functions of law enforcement officers. Defendant himself concedes that the approach to the car was permissible. Defendant contends, however, that the additional steps of asking defendant his name and demanding his driver's license and registration were not permitted. We do not agree.
We hold that when an officer is performing his duty to aid a motorist, he has a right to ascertain that individual's name and to ascertain ownership of the car. The officer has this right in order to protect himself from inadvertently aiding a party not in rightful possession of the car, or inadvertently allowing an unlicensed person to drive the vehicle after it is made operable. Therefore not only was the initial approach permissible, but it was also permissible to request production of the driver's license and registration in order to ascertain that the driver was licensed to drive and had authority to be in possession of the car.
We emphasize the limited character of the seizure here. There was no substantial intrusion or limiting of defendant's movements, as defendant was not even required to halt his progress. Furthermore, no search of his person was made and the initial encounter entailed no loss of dignity to defendant. See People v. De Bour, supra.
Further, Officer Finn was justified in contacting the dispatcher by radio, especially when he learned that defendant was not in possession of his driver's license. This contact entailed no additional invasion of defendant's privacy.
In summary, we conclude that because it was permissible for the officers to approach the car as a part of their duties, and because ascertainment of the identity of the driver and ownership of the vehicle was *1351 reasonable under the circumstances, the very limited intrusion of asking defendant for his driver's license and registration was also reasonable, and defendant's resulting arrest was therefore legal.
We emphasize that this holding is not a license to stop drivers or others to ask them for identification as a result of whim, caprice, or idle curiosity. See Stone, supra; McPherson, supra. Likewise, stops based on pretext which are in fact made for purposes of harassment or criminal investigation without reasonable cause are prohibited. However, the need for an officer to learn the identity of persons with whom he is dealing when engaged in a bona fide attempt to carry out his duties is sufficient to permit the limited intrusion which occurred here.

II.
Defendant next contends that the statements he made during interrogation by Officer Shull were not voluntary, and therefore should have been suppressed in their entirety.
The record shows that, during the course of the interrogation, Shull eventually became angry at what he considered to be evasive answers by defendant, and that he then slammed his pencil on the desk and shouted at defendant. There were also allegations by defendant that, at this time, Shull threatened to link defendant to several unsolved homicides.
The court ruled that all statements made after Shull became angry were not voluntary, and therefore should be suppressed, but refused to suppress statements made prior to this time. We find no error in that ruling.
A statement is not voluntary if it is extracted by threats or violence, or obtained by the exertion of any improper influence. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747; People v. Parada, 188 Colo. 230, 533 P.2d 1121.
Defendant asserts that his entire statement should have been suppressed as involuntary because of (1) the relationship of one part of the statement to another, and (2) the overall tenor of the interrogation. The record fails to support either assertion.
After being given his Miranda warnings, and after being confronted with certain facts, defendant stated that he was the driver of the car, but that he had not robbed either victim. Officer Shull then attempted to ascertain the names of the other participants in the robbery, and it was during the course of this portion of the questioning that Shull became angry and alluded to the unsolved homicides. Defendant's subsequent statements concerned the identity of the other participants in the robbery. These statements, which were held to be involuntary, were not so intricately interwoven with admission of driving the car as to make the two portions of the entire statement inseparable.
Furthermore, the record fails to establish that the overall tenor of the interrogation was overbearing or oppressive. Prior to the time Shull became angry, there is no evidence that the procedures employed by the interrogating officers constituted impermissible threats or violence, or the exertion of any improper influence. The admission of the first portion of defendant's statements was therefore proper.

III.
Defendant also contends that it was error to fail to grant him a new trial after it was discovered that some of the jurors may have overheard two spectators discussing whether or not defendant's juvenile record could be placed into evidence. We disagree.
Just before closing argument, a short recess was taken. The two spectators undertook their discussion of defendant's juvenile record while walking down the hall, and the conversation was concluded after the pair had entered the elevator. One of the spectators then realized that two passengers in the elevator were jurors who may have overheard a portion of the conversation. This spectator promptly informed defense counsel of the incident, but instead of informing *1352 the court and asking for a limited instruction, or for an inquiry of the jurors, or a mistrial, counsel waited until after the verdict was in to raise the issue in his motion for a new trial.
Even if defendant had called this matter to the court's attention in a timely manner, which would have allowed prompt investigation and corrective action, we find that the record fails to establish anything more than speculation that defendant was prejudiced by the incident. Therefore, the denial of the motion for a new trial was proper. Casias v. People, 160 Colo. 152, 415 P.2d 344, cert. denied, 385 U.S. 979, 87 S.Ct. 523, 17 L.Ed.2d 441.
Judgment affirmed.
COYTE and STERNBERG, JJ., concur.