The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Leonard David MELGOSA and Francis-
co J. Rivero, Defendants–Appellees.

No. 87SA359.

Supreme Court of Colorado,
En Banc.

April 4, 1988.

Barney Iuppa, Dist. Atty., Gordon R. Denison, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Paul R. Bratfisch, Deputy State Public Defender, Colorado Springs, for defendant-appellee Leonard Melgosa.

Patrick W. Buckingham, Colorado Springs, for defendant-appellee Francisco J. Rivero.

QUINN, Chief Justice.

In this interlocutory appeal, the People challenge an order suppressing a stereo unit and other items seized from the passenger compartment of an automobile during an investigatory stop and detention of the occupants of the automobile, a postarrest confession made by one of the defendants, and a stolen gearshift knob taken from the other defendant after his arrest. We conclude that, under the specific circumstances of this case, the police officers had a reasonable basis for making a protective search of the passenger compartment of the automobile in the interest of their own safety and lawfully seized the suppressed objects during the course of that protective search. We accordingly reverse the order of suppression.

I.

The defendants, Leonard David Melgosa and Francisco J. Rivero, were charged in the District Court of El Paso County with the felony of first degree criminal trespass by unlawfully and knowingly entering a motor vehicle with the intent to steal something of value on April 21, 1987. After entering a plea of not guilty to the charge, the defendants filed motions to suppress all evidence seized during a search of Melgosa's automobile, all evidence seized from their persons, and statements made by Mel-

gosa during and subsequent to his detention and arrest. The evidence presented at the suppression hearing established the following pertinent facts.

At 2:31 a.m. on April 21, 1987, a dispatcher for the Colorado Springs Police Department aired over a police radio channel the report of a possible "burglary" of a motor vehicle in progress at 729 North Union Boulevard in Colorado Springs. The transmission stated that a blue van was possibly involved in the break-in. It was unclear from the transmission whether the blue van was the vehicle broken into or whether the blue van was the vehicle which the suspects were operating. After hearing the dispatch, Officer Taylor of the Colorado Springs Police Department turned onto the street that bordered the north side of the location of the alleged break-in. Various business establishments were located in this area, including H & L Motor Company.

Upon approaching the location, Officer Taylor observed a blue two-door Pontiac automobile in a "low rider" position with two occupants. The automobile was parked on the street adjoining H & L Motor Company. As the officer drove closer to the location, he noticed the blue automobile pulling away from the curb. Believing that this might be the "blue van" that was reported in the transmission, Officer Taylor turned on his siren and overhead lights and stopped the automobile. He ordered the driver, Melgosa, to get out of the automobile and to come over to his police vehicle. The defendant did so and presented a Colorado driver's license identifying himself. In response to the officer's inquiry as to why he was in the area, Melgosa stated that he had just dropped off his girlfriend. Melgosa, however, was unable to provide the officer with the address of his girlfriend's house.

In conducting a pat down search of Melgosa, Officer Taylor felt what he believed were cassette tapes in Melgosa's rear pocket. The officer removed one of the tapes to verify that it was a tape. Officer Taylor testified at the suppression hearing that the presence of the tapes in Melgosa's pocket "led me to believe that this possibly could be our suspect" due to the report of a possible vehicular break-in. The officer placed Melgosa in the rear seat of the police vehicle as a safety precaution.

While Officer Taylor was questioning and frisking Melgosa, Officer Kruse arrived on the scene and parked behind Melgosa's automobile. Officer Kruse then positioned himself at the right rear of the automobile and observed Rivero, the passenger, place both of his hands on an object, which the officer could not then identify, and place it under the right front seat of the automobile. The officer ordered Rivero out of the automobile and put him in the rear seat of his police vehicle. Officer Kruse testified at the suppression hearing that he took this action because he believed that the object placed under the front seat could have been a weapon.

Officer Kruse informed Sergeant Robertson, who had also arrived on the scene, that he had seen the passenger place something under the right front seat of the automobile. Sergeant Robertson went up to the automobile and looked inside with his flashlight. After observing some loose wires protruding from under the seat on the passenger side, he entered the automobile and removed an AM–FM stereo unit from under the front passenger seat as well as several knobs which appeared to be from the stereo. Officer Taylor then joined Sergeant Robertson and removed a pair of wire cutters and similar tools, such as a pair of pliers,[1] from the floorboard directly behind the driver's seat and a metal plate for the stereo from the area under the front passenger seat.

Moments after the discovery of these items in Melgosa's automobile, another police officer reported to Officer Taylor that a Chevrolet pick-up truck on the car lot had been broken into. Taylor examined the Chevrolet pick-up and saw that the tape player had been removed from the dashboard of the pick-up and that a gearshift knob was missing.

1. In its written suppression ruling, the district court made reference to a pair of pliers and

"miscellaneous tools" taken from the rear seat behind the driver's seat.

The officers placed Melgosa and Rivero under arrest and transported them in separate vehicles to the El Paso County jail. On the way to the jail, Melgosa was advised of his *Miranda* rights. Subsequent to the advisement and prior to arriving at the jail, Melgosa described to Officer Taylor the method he had used to enter the pick-up truck and admitted that he took the stereo from the truck. While Rivero was being processed at the jail, a gearshift knob was taken from his pocket.

In granting the defendants' motion to suppress, the district court ruled that the investigatory stop and temporary detention of the defendants were constitutionally justified. The court accordingly refused to suppress the statement made by Melgosa to Officer Taylor prior to the officer's placement of Melgosa in the police vehicle[2] and likewise refused to suppress the cassette tapes recovered from Melgosa during the initial frisk. The district court next ruled that Sergeant Robertson's conduct in looking under the passenger seat of the automobile constituted an illegal warrantless search unsupported by probable cause to believe that the occupants had committed a crime and, on that basis, suppressed the stereo unit and other objects found in Melgosa's automobile.[3] The court thus concluded that the arrest of the defendants was based on illegally seized evidence and suppressed Melgosa's postarrest confession and the gearshift knob taken from Rivero at the jail as the fruits of unconstitutionally seized evidence and the unconstitutional arrest of the defendants.

In challenging the order of suppression, the People place primary reliance on the proposition that Sergeant Robertson's act of looking in the passenger compartment of the automobile was a constitutionally permissible protective search conducted in the interest of securing the officers' safety during the investigatory stop and detention of the defendants. If the People's claim is correct, we must then consider whether the police officers were constitutionally justified in seizing the items which they discovered in the course of the protective search. The answer to this latter question will determine whether the district court erred in suppressing Melgosa's postarrest statement and the gearshift knob recovered from Rivero as the fruits of an unconstitutional seizure. Before considering these

---

2. Because the People filed this interlocutory appeal pursuant to C.A.R. 4.1, the district court's refusal to suppress Melgosa's statement to Officer Taylor is not before us, and we express no opinion on that aspect of the suppression ruling.

3. The district court ruled, in pertinent part, as follows in its written order of suppression:

> Officer Robertson's reaching under the passenger side seat of the Defendants' automobile was a "search" of that vehicle, without a warrant and without a showing of legal exception to that requirement. Initially, it is to be noted that the search here was not conducted pursuant to any practice or procedure intended to preserve the contents of the vehicle for its occupants, for safekeeping. Accordingly, this search here cannot be justified as an inventory search exception to the general warrant requirement.
>
> Beyond the inventory exception, a general exception to the warrant requirement exists, allowing the police to conduct a warrantless search of a motor vehicle if, "... (1) there is probable cause to believe that it contains evidence of a crime; and (2) the circumstances create a practical risk of the vehicle's unavailability if the search is postponed until a warrant is obtained."
>
> In examining the first requirement of the so-called "auto exception" I find that at the time Officer Robertson entered the Defendants' motor vehicle, he did not have, personally, or through fellow officers, probable cause to believe " '... that an offense [had] been or [was] being committed' by the person to be arrested."
>
> * * * * * *
>
> Because the testimony shows that as a part of Officer Robertson's search, the "dash plate", and the player's knobs and a pair of wire cutters were either seized or moved to a place where they could be seen, those items in addition to the stereo itself are suppressed as evidence. Because the miscellaneous tools including the pair of pliers with black handles, all taken from the rear seat behind the driver's seat were observed by Officer Taylor at a time that he did not have probable cause to believe a crime had been committed, their seizure could not be justified as "plain view". They are therefore suppressed as evidence.
>
> Because the Defendants' subsequent arrests were based upon the illegally seized stereo and additional parts, any statements made by or evidence seized from either of the Defendants after they were placed in their respective patrol cars is suppressed.

[Citations omitted].

questions, we review the basic principles of Fourth Amendment jurisprudence which provide the framework for our analysis.

## II.

Probable cause, which is the traditional constitutional standard for a formal arrest or a full-scale search, is designed to "safeguard citizens from rash and unreasonable interferences with privacy" and, at the same time, "to give fair leeway for enforcing the law in the community's protection." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). As such, probable cause is a flexible standard which is to be measured not by a "more likely true than false" level of certitude but by a common-sense, nontechnical standard of reasonable cause to believe. *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (plurality opinion); *see also People v. Hearty*, 644 P.2d 302 (Colo.1982). This requirement of "reasonableness" provides "the relative simplicity and clarity necessary to the implementation of a workable rule." *Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979). Thus, in the case of an arrest, probable cause means reasonable grounds to believe that the person has committed or is committing a crime. *E.g., Brinegar*, 338 U.S. at 175–76, 69 S.Ct. at 1310–11. In the case of a search, probable cause means reasonable grounds to believe that contraband or evidence of criminal activity is located in the area to be searched. *E.g., Hearty*, 644 P.2d at 309–10; *People v. Ball*, 639 P.2d 1078, 1082 (Colo.1982). "[D]ue consideration should be given to a law enforcement officer's experience and training in determining the significance of his observations in the context of probable cause." *Ball*, 639 P.2d at 1082.

All forms of police intrusion, of course, need not be justified by a standard of probable cause. Because street encounters between citizens and police officers often involve very limited intrusions into the personal privacy or security of the citizen, Fourth Amendment jurisprudence recognizes that in these situations a diminished standard of "reasonable suspicion" can pro-vide an adequate constitutional foundation for various intermediate types of police response to suspicious circumstances. *E.g., Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Tate*, 657 P.2d 955 (Colo.1983); *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971). For example, we have held that a police officer may make an investigatory stop and detention of a person when: (1) there is an articulable and specific basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to occur; (2) the purpose of the intrusion is reasonable; and (3) the scope and character of the intrusion is reasonably related to its purpose. *E.g., People v. Mascarenas*, 726 P.2d 644 (Colo.1986); *Tate*, 657 P.2d 955; *Stone*, 174 Colo. 504, 485 P.2d 495. It is also proper for an officer to frisk a suspect for weapons during the course of an investigatory stop. *Tate*, 657 P.2d at 959; *People v. Martineau*, 185 Colo. 194, 198, 523 P.2d 126, 128 (1974).

In light of the particular hazards confronting a police officer in roadside encounters involving drivers and passengers of automobiles, Fourth Amendment rules permit a police officer to order a driver or passenger out of the vehicle during an investigatory stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *People v. Carlson*, 677 P.2d 310 (Colo.1984). The less exacting standard of "reasonable suspicion" also permits a police officer, during the course of a roadside investigatory stop, to search those areas of the passenger compartment of an automobile in which a weapon may be placed or hidden as long as there is an articulable and objectively reasonable basis in fact to support the officer's apprehension that the suspect he is dealing with is potentially dangerous. *See Michigan v. Long*, 463 U.S. 1032, 1051, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983); *People v. Cagle*, 688 P.2d 718 (Colo.1984); *People v. Lewis*, 659 P.2d 676 (Colo.1983). Such a limited intrusion is viewed as a reasonably

effective method of neutralizing the risk of physical harm confronting the officer. The fact that the officer is in physical control of the suspect does not necessarily remove the threat of harm to the officer from a weapon, for the suspect can still break away from police control and retrieve the weapon from his automobile or, if not ultimately arrested, might well have access to any weapons upon his reentry into the automobile. *Long*, 463 U.S. at 1051–52, 103 S.Ct. at 3481–82.

■ When a police officer is constitutionally justified in intruding on the privacy or security of another and comes upon an object which the officer has reasonable grounds to believe is incriminating, he may lawfully seize the object without a search warrant under the so-called "plain view doctrine." *Brown*, 460 U.S. at 743, 103 S.Ct. at 1544. A "plain view seizure" involves "no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *Id.* at 738, 103 S.Ct. at 1541 (quoting *Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)). The seizure of property in plain view, therefore, is not so much an independent exception to the warrant requirement as it is "simply ... an extension of whatever the prior justification for an officer's 'access to an object' may be." *Brown*, 460 U.S. at 738–39, 103 S.Ct. at 1541. For a "plain view seizure" to be constitutionally permissible, however, there generally must be probable cause to believe that the object is incriminating. *Arizona v. Hicks*, —— U.S. ——, 107 S.Ct. 1149, 1153–54, 94 L.Ed.2d 347 (1987). The diminished standard of "reasonable suspicion,"

in other words, will generally not suffice for a "plain view seizure," because "[d]ispensing with the need for a warrant is worlds apart from permitting a lesser standard of *cause* for the seizure than a warrant would require." *Id.*[4]

## III.

It is within this framework of the aforementioned principles that we turn to the issues raised by this case.

### A.

■ In this case there is no question that the investigatory stop and temporary detention of the defendants were constitutionally justified. Within a minute after hearing the 2:31 a.m. police dispatch broadcasting a possible break-in involving a blue van at 729 North Union Boulevard in Colorado Springs, Officer Taylor observed a blue automobile pull away from the area where the alleged crime was reported to have been committed. The officer thus had an articulable and specific basis in fact for suspecting that the defendants had been involved in the reported break-in. There is likewise no question that the purpose of the stop was reasonable—that is, to determine whether the defendants were connected with the reported break-in aired over the police radio moments before the stop itself. Moreover, the scope and character of the initial intrusion were reasonably related to its purpose. In order to secure the safety of the officers at the scene, it was proper to order the defendants out of the automobile, to frisk them for weapons, and then to place them in separate police vehicles during the intervening police investigation at the scene.[5]

---

**4.** We state that there "generally" must be probable cause for a "plain view seizure," and that a "reasonable suspicion" standard will "generally" not suffice for a "plain view seizure," because the Supreme Court's opinion in *Arizona v. Hicks*, —— U.S. ——, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), expressly recognizes that a "plain view seizure" on less than probable cause may be constitutionally justified when the seizure "is minimally intrusive and operational necessities render it the only practicable means of detecting certain types of crime." *Id.* 107 S.Ct. at 1154.

**5.** The defendants argue that the fact that they were locked in the back seat of police vehicles at the time of the protective search of the car undercuts any claim that the search was conducted in the interests of police safety. This argument, however, ignores the realities of the situation confronting the officers. There is always a possibility, as the Supreme Court recognized in *Michigan v. Long*, 463 U.S. 1032, 1051–52, 103 S.Ct. 3469, 3481–82, 77 L.Ed.2d 1201 (1983), that a suspect might break away from police control and retrieve a weapon from his automobile. Moreover, neither Melgosa nor

## B.

 We turn then to the question whether, during the investigatory stop and detention of the defendants, the officers were constitutionally justified in searching the passenger compartment of the automobile for weapons in the interest of their own safety. We conclude that the officers were constitutionally justified in making such a protective search of the automobile.

Officer Kruse, shortly after the stop of Melgosa's automobile, observed Rivero, a passenger in the front seat of the automobile, place some undetermined object under the seat. This action of Rivero was an obvious response to the police encounter. The suspicious nature of Rivero's conduct, and the fact that the defendants were first observed near the very site where the possible criminal break-in occurred at approximately 2:30 a.m. and were seen there within moments of the police broadcast, clearly justified the officers' apprehension that the persons they were dealing with were potentially dangerous. *E.g., Long,* 463 U.S. 1032, 103 S.Ct. 3469; *Cagle,* 688 P.2d 718.

## C.

 Since the search of the passenger compartment of the automobile was constitutionally permissible, we are left with the question of whether the officers effected an unconstitutional seizure in taking and examining the stereo unit, the knobs, the stereo plate, and the tools discovered inside Melgosa's automobile during the course of the protective search. The district court granted the defendants' motion to suppress these items on the basis that the officers, when they entered Melgosa's automobile, lacked probable cause to believe that the defendants had committed a crime. Because this initial entry into the automobile, in the court's view, was not constitutionally justified, the court suppressed all the items found during the course of the protective search. In so ruling, the district court erred.

We have already determined that the officers' entry into the automobile for the purpose of conducting a protective search for weapons was constitutionally justified, as was the ensuing protective search. We now hold that the discovery of the stereo unit, knobs, stereo plate, wire cutters and other tools during the protective search of the automobile provided the officers with probable cause to believe that these objects were the fruits and instrumentalities of a crime and thus were subject to seizure under the plain view doctrine. As previously discussed, probable cause for a "plain view seizure" requires that the facts available to the officers would warrant a person of reasonable caution in the belief that certain items are contraband, fruits or instrumentalities of a crime, or evidence of criminal activity. *Brown,* 460 U.S. at 742, 103 S.Ct. at 1543; *People v. Franklin,* 640 P.2d 226, 229–30 (Colo.1982). Probable cause "does not demand any showing that such a belief be correct or more likely true than false." *Brown,* 460 U.S. at 742, 103 S.Ct. at 1543. Moreover, the fact that the situs or the precise details of the particular crime were not as yet determined when the "plain view seizure" was made does not serve to vitiate the reasonableness of an officer's belief that objects discovered in the automobile were incriminating.

Several factors in the case lead us to conclude that the officer had probable cause to believe that the objects discovered during the protective search of Melgosa's automobile were associated with criminal activity. We initially consider the facts known to the officers prior to the commencement of the protective search of the automobile. These facts are critical to the assessment of probable cause. Minutes before the protective search the officers, at approximately 2:30 a.m., had received a radio dispatch of a possible break-in by suspects in a "blue van," the same color as Melgosa's automobile, and at the same location where the defendants were initially observed by Officer Taylor. Melgosa, who was driving the automobile, was unable to

Rivero had yet been arrested, and if a decision were made to release them from police control before the protective search had been complet-

ed, both defendants could have reentered their automobile and have had access to any weapons that might have been inside.

give a satisfactory explanation of his presence at the location and had in his pocket several tape cassettes, the same type of property that might well have been taken in the reported break-in; and Rivero, the passenger in the automobile, had attempted to place an object under the front seat of the automobile shortly after the initial stop.

Next, we stress that if a protective search is to be effective, the officers conducting the search must be permitted to make a cursory examination of the objects discovered during the search in order to assure themselves that these objects are not weapons and that weapons have not been secreted inside any of the objects. In the instant case, examination of the stereo unit disclosed to the officers that its wires had been loosened or cut, a condition consistent in all respects with a stereo unit that had been forcibly removed from a motor vehicle. The discovery of the stereo plate under the area of the front seat was additional evidence consistent with a forcible removal of the stereo unit.

Finally, we underscore again the principle that probable cause to believe that an object is incriminating must be determined on the basis of the cumulative state of facts known to the officers when the object in question is discovered. In this case, the discovery of the stereo unit made it quite apparent to the officers that Rivero's initial action in placing an object under the front seat of the automobile was an effort to secrete this object from the officers during the roadside encounter. Moreover, the presence of the wire cutters and other tools in the automobile was further evidence of a forcible removal of the stereo unit from a motor vehicle, since, as the officers were well aware, these tools are the very type of instruments used in stealing stereo units from motor vehicles.

Although the actual vehicle from which the stereo unit had been stolen was not discovered until a few moments after the seizure in question, we are satisfied that all the facts available to the officer upon discovery of the stereo unit and other objects in Melgosa's automobile provided the officer with " 'a practical, nontechnical' probability," *Brown*, 460 U.S. at 472, 103 S.Ct. at 1543 (quoting *Brinegar*, 338 U.S. at 176, 69

S.Ct. at 1311), that they had come upon incriminating evidence relating to the theft of a stereo unit from a motor vehicle. The seizure of these items, therefore, was constitutionally justified under the plain view doctrine.

### D.

It follows from the preceding analysis that the district court erred when it ruled that the arrest of the defendants was based on unconstitutionally seized evidence and that Melgosa's postarrest statement and the gearshift knob taken from Rivero at the stationhouse were the fruits of an unconstitutional seizure. The arrest of the defendants was constitutionally justified on the basis of probable cause to believe that they had committed the crime of first degree criminal trespass. § 18-4-502, 8B C.R.S. (1986).

The police broadcast, which reported a possible "burglary" of a motor vehicle at 729 North Union Boulevard, the discovery of the defendants' automobile pulling away from the location of the reported crime moments after the police broadcast, the obvious effort by Rivero to hide an object under the front seat of the automobile, the discovery of the stereo unit, knobs, a stereo plate, and tools commonly used in the theft of property from a motor vehicle—all these factors, plus the actual discovery of the vehicle from which the stereo unit and gearshift knob had been stolen, provided the officers with probable cause to believe the defendants had unlawfully entered a motor vehicle and stolen the stereo unit from the vehicle. It follows, therefore, that Melgosa's postarrest confession and the removal of the gearshift knob from Rivero at the stationhouse were not the products of any unconstitutional seizure of evidence from Melgosa's automobile during the protective search for weapons, nor were the confession and gearshift knob the fruits of an unconstitutional arrest.

The suppression order is accordingly reversed.