The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

John Allen TATE, Defendant-Appellee.

No. 82SA532.

Supreme Court of Colorado, En Banc.

Feb. 7, 1983.

**956**

Stuart A. VanMeveren, Dist. Atty., Stephen J. Roy, Deputy Dist. Atty., Fort Collins, for plaintiff-appellant.

Banowetz, Liggett & Moore, Thomas H. Moore, Fort Collins, for defendant-appellee.

QUINN, Justice.

The People in this interlocutory appeal challenge the ruling of the district court suppressing a screwdriver seized by a police officer from the defendant, John A. Tate, and a statement made by him to the officer shortly after the seizure. The district court concluded that there was no probable cause to believe that the defendant committed a crime and, therefore, the defendant's arrest was unlawful and any evidence resulting therefrom must be suppressed. We reverse the suppression ruling because, in our view, the court did not apply the appropriate legal standard in resolving the suppression motion.

The defendant is charged in the Larimer County District Court with two crimes allegedly committed on June 5, 1982, in Fort Collins, Colorado. One count charges the crime of criminal attempt to commit third degree burglary,[1] and the other alleges the offense of possession of burglary tools, consisting of a screwdriver and vending machine keys.[2] Prior to trial the defendant filed a motion to suppress any evidence seized from his person and all other evidence derived therefrom on the ground that

---

1. Attempted third degree burglary is committed when a person, acting with the kind of culpability otherwise required for the commission of third degree burglary, engages in conduct constituting a substantial step toward the commission of third degree burglary. Section 18–2–101(1), C.R.S.1973 (1978 Repl.Vol. 8). A person commits third degree burglary if, with the intent to commit a crime, he enters or breaks into any vending machine. Section 18–4–204, C.R.S.1973 (1978 Repl.Vol. 8).

2. The crime of possession of burglary tools is committed when a person possesses any tool, instrument or other article adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by taking, and the person intends to use the thing possessed in the commission of such an offense. Section 18–4–205, C.R.S.1973 (1978 Repl.Vol. 8).

he was subjected to an unlawful arrest in violation of the United States and Colorado Constitutions. *U.S. Const.* Amends. IV and XIV; *Colo. Const.* Art. II, Sec. 7.

The evidence at the suppression hearing established the following sequence of events. On June 5, 1982, at 1:58 a.m. Officer James Vincent of the Fort Collins Police Department was dispatched to investigate a report by a security guard at the Fort Collins Municipal Golf Course that two persons were seen near the vending machines at the clubhouse and appeared to be tampering with the machines. The officer immediately went to the area in a marked police vehicle. As he drove into the parking lot of the golf course, he was advised by radio that the persons were now running in a northwesterly direction toward a nearby cemetery. Moments later he received another radio message that one of the suspects had been apprehended at a garage near the clubhouse. The officer went directly to that location and observed a security guard sitting on top of the defendant. The guard stated to the officer: "I've got this one. The other went towards the ball ponds."

The officer approached the defendant and conducted a pat-down search. He recovered a screwdriver, which he recognized as a prying tool commonly used in burglaries, and, after handcuffing the defendant,[3]

he advised him of his *Miranda* rights.[4] The security guard identified the defendant as one of the suspects earlier seen by him near the vending machines and informed the officer that the defendant and his companion started to run as soon as the police vehicle approached the club house. The defendant, in response to the officer's request to explain his presence at the golf course, told the officer that he and his companion were just walking around the area and stopped by the machines to get a bottle of pop. When asked why he had a screwdriver on his person, the defendant stated that he "must have forgotten to take it out of his pocket earlier in the day." The officer thereafter made a cursory search of the immediate vicinity and found a ring of keys used to open vending machines.

The district court rejected the People's argument that the seizure of the screwdriver was pursuant to a lawful frisk, conducted in the course of a limited detention based upon the officer's reasonable suspicion of criminal activity. Instead, the court determined that the seizure of the screwdriver could be upheld only if the defendant had been lawfully arrested pursuant to probable cause. Concluding that probable cause to arrest did not exist, the court accordingly suppressed the screwdriver and the statement made by the defendant as the products of an unlawful arrest.[5] On this appeal

---

**3.** Officer Vincent testified that after he handcuffed the defendant, he then raised him up and advised him that he was under arrest for "investigation of burglary." Whether the officer intended to only "detain" the defendant for further investigation or intended to "arrest" him is not critical to our resolution of this matter. These labels are merely a shorthand way of describing different degrees of intrusion on personal security and privacy. The critical inquiry is whether the intrusion, regardless of label, was justified under the totality of circumstances. *E.g., People v. Mathis,* 189 Colo. 534, 542 P.2d 1296 (1975); *People v. Severson,* 39 Colo.App. 95, 561 P.2d 373 (1977). *See generally* 2 W. LaFave, *Search and Seizure* § 5.1 (1978).

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant did not contend, nor did the trial court determine, that the defendant's subsequent statement to

the officer was obtained in violation of *Miranda.*

**5.** The district court's ruling was as follows:
"Well, in order for the Court to find in favor of the People and permit the evidence to come in, the Court must find that there was a lawful arrest either by virtue of a search warrant, which was not issued in this case, or that there's probable cause to believe not only that an offense had been committed, but committed by this particular individual.
"Certainly the police officer was aware of other facts and circumstances made known to him at that particular time, but the Court finds that there's not probable cause to establish a lawful arrest and, therefore, will suppress the evidence that was found on the Defendant, which was a screwdriver, and the statements made subsequent thereto by the Defendant. So, the motion of the Defendant to suppress those items of evidence is granted."

the People argue that the court's ruling was based upon a faulty premise, in that the seizure of the screwdriver was not incident to arrest but rather was the product of a permissible protective frisk for weapons conducted during a lawful detention of the defendant. We agree with the People's argument.

The Fourth Amendment to the United States Constitution and its Colorado counterpart, *Colo. Const.* Art. II, Sec. 7, require that arrests be based on probable cause to believe that the person arrested has committed a crime. *E.g., Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Gallegos v. People,* 157 Colo. 173, 401 P.2d 613 (1965). This is not to say, however, that a police officer may not subject a person to a temporary detention, short of the traditional arrest, on less than the probable cause standard. The genesis of the rule authorizing limited intrusions into personal security on less than probable cause is *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There the United States Supreme Court held:

> "[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken." 392 U.S. at 30–31, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911.

The court in *Terry* carefully observed that in justifying this limited intrusion "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.... And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

Cases subsequent to *Terry* make clear that intermediate forms of police response, short of the traditional arrest and the full scale search, may be employed under narrowly defined circumstances upon less than probable cause. *See, e.g., Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (temporary detention of occupant of home, on less than probable cause to arrest, justified where officers had search warrant for home and confronted occupant as he was leaving home immediately before search commenced); *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (special enforcement problem confronting border patrol adequate to support vehicular stop and investigation based upon agent's reasonable suspicion of illegal entry by aliens); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (officer's forcible stop of suspect justified on basis of informer's tip that suspect was armed and carrying narcotics). Three conditions, however, must exist before a person may be subjected to some form of intermediate intrusion, such as an investigatory stop or a limited search of his person: (1) there must be an articulable and specific basis in fact for suspecting that criminal activity has or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *E.g., People v. Johnson,* 199 Colo. 68, 605 P.2d 46 (1980); *People v. Martineau,* 185 Colo. 194, 523 P.2d 126 (1974); *People v. Lucero,* 182 Colo. 39, 511 P.2d 468

(1973); *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971).

The suppression ruling in this case was predicated solely on the court's determination that since there was no probable cause to arrest the defendant when the screwdriver was recovered from his person, both the screwdriver and the defendant's subsequent statement to Officer Vincent were the product of an illegal arrest. The court refused to consider whether, as the People contended, the officer's action in seizing the screwdriver was justified as a legitimate form of intermediate police response to the situation confronting the officer at that time. The district court in this respect erred. The record establishes without dispute that the officer had a reasonable and articulable suspicion that criminal activity was afoot and, therefore, was justified in detaining the defendant to conduct an on-the-scene investigation and to frisk him for the purpose of self-protection.

The officer's reasonable and articulable suspicion of criminal activity is obvious. He had been dispatched in the early morning hours to a golf course in response to a report from the security guard that two suspects were tampering with vending machines. Upon his arrival at the golf course moments after the report, he was informed by radio that one of the suspects had been apprehended in the immediate vicinity of the clubhouse. When the officer went to this location he observed the defendant being restrained by the security guard who immediately told the officers "I got this one" and "the other went to the ball ponds." This statement clearly implied that the defendant was one of the suspects previously observed by the security guard. These facts justified the officer in temporarily detaining the defendant.

Further, the purpose of the intrusion was reasonable—to investigate the suspected criminal activity of the defendant. Because the officer reasonably suspected the defendant might be engaged in criminal conduct, "it was reasonable ... to believe that [he] might be dealing with a potentially armed and dangerous person and therefore a protective search for weapons ... was appro-

priate." *People v. Martineau,* 184 Colo. at 198, 523 P.2d at 128. Last, the scope and character of the intrusion, which consisted of a temporary detention and a pat-down search for weapons, were reasonably related to the purpose of ensuring safety while conducting a field investigation of suspected criminal activity. Since the screwdriver was a potential instrument of harm to both the officer and the security guard, it was properly seized in the interest of self-protection. It therefore follows that neither the screwdriver nor the defendant's subsequent statement was the product of an unconstitutional seizure of the defendant or an illegal search of his person.

The record further establishes that moments after the defendant's handcuffing additional facts were brought to the officer's attention during the course of his lawful detention of the defendant. These facts consisted of the security guard's identification of the defendant as one of the persons whom he earlier had observed near the vending machines, the security guard's report of the defendant's flight from the scene upon the officer's arrival, and the officer's discovery of a ring of vending machine keys near the site of the defendant's apprehension. Knowledge of these facts was lawfully acquired by the officer, and, when added to the information already known, was sufficient to establish probable cause to arrest the defendant for attempted third degree burglary and possession of burglary tools.

The suppression ruling is reversed.

LOHR, J., specially concurs.

LOHR, Justice.

As the court's opinion demonstrates, the investigation of suspected criminal activity provided a legitimate purpose for detaining the defendant and, under the circumstances, a pat down search for weapons was reasonably related to that purpose. However, I do not read the record to establish that the officer's subjective purpose was necessarily so narrow. After discovering the screwdriver and handcuffing the defendant, the officer advised him that he was under arrest for investigation of bur-

glary. We are left to surmise whether the officer planned any less intrusive detention when he first came on the scene. I agree with the court's holding, nonetheless, that under our prior case law the officer's subjective intent is not critical. *See* footnote 3 of the court's opinion and *People v. Mathis,* 189 Colo. 534, 542 P.2d 1296 (1975). That case must be read to mean that if there is an articulable and specific basis for suspecting that criminal activity has or is about to take place, and there is a *legitimate* purpose for the intrusion, and the scope and character of the intrusion are reasonably related to that purpose, the intrusion is constitutionally permissible even if the officer's subjective purpose is to effect an intrusion more extensive than legally justified. I believe this to be faithful to our intent in *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971) to protect the constitutional rights of a detained person while giving maximum permissible scope to the activities of law enforcement officers in investigating and preventing crime. Accordingly, I agree that the trial court's suppression order should be reserved.