**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Donald ELLIOTT, Defendant-Appellant.**

**No. 82CA1141.**

Colorado Court of Appeals, Div. I.

Sept. 1, 1983.

Rehearing Denied Oct. 13, 1983.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Valerie McNevin-Petersen, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Thomas H. May, Denver, for defendant-appellant.

BABCOCK, Judge.

Defendant appeals from a judgment of conviction for unlawfully possessing for sale a narcotic drug (cocaine). His sole contention on appeal is that the trial court erred in denying his motion to suppress evidence obtained incident to an unlawful seizure. We affirm.

In November 1980, Agent Long of the Drug Enforcement Administration (DEA) was assigned to Stapleton International Airport in Denver. He received a call from Detective Buysse of the Denver police department's intelligence division, in which Buysse told him that both the Denver and Miami police suspected defendant was smuggling narcotic drugs from Miami on the return trips to Denver. Along with this information, Buysse gave Long identification and background material on defendant. Long verified this information through Narcotic and Dangerous Drug Information Services and discovered defendant was a documented cocaine dealer in Denver. The following month, Buysse informed Long that defendant owned a .340 Barretta automatic pistol.

Beginning in mid January, 1981, defendant became the target of DEA agents' regular surveillance of inbound Miami flights.

On February 11, 1981, the Denver police received and passed along to Long information from a confidential informant that defendant was arriving in Denver from Miami that evening. Long confirmed the information by checking with Continental Airlines, and then arranged for surveillance when defendant arrived in Denver.

When defendant deplaned, he was talking with a man and woman; the group was met by a man who had been in the waiting area. The group then divided and defendant walked down the concourse with the man from the waiting area. While walking down the concourse, Long observed defendant glance over his shoulder several times, shifting his eyes from side to side.

Upon reaching the terminal, defendant and his companion split up, and defendant took the longest, rather than the most direct, route to the baggage carousel. At the carousel defendant again met the woman, and was overheard to say, "Boy, if I lose my bag, I'm going bankrupt."

When defendant's bag came, he picked it up and headed for the exit. Before he reached the door, he was approached by Agents Long and Williamson of the DEA. Long told him that he was a federal agent and asked if he could speak to him. Defendant said, "Sure," and, in answer to Long's question, said he was coming from Miami. Defendant also allowed Williamson to examine his ticket which the agent returned to him. Long next requested some identification, and defendant said he was not sure if he had any because his briefcase had been stolen. However, defendant did look in a briefcase that he was carrying and produced a checkbook.

While defendant was looking in his briefcase, a Denver police detective signaled Long to look at defendant's back. Long observed a bulge, about the size of a hand, under defendant's coat. Long then asked if defendant had any "picture I.D." and, upon receiving a negative response, asked if defendant would mind "coming up to our office with us." Defendant replied, "Not at all."

While walking to the office defendant asked, "What's this all about?" Long replied that he was a federal narcotics agent "monitoring all the flights coming in from Miami looking for narcotics couriers." According to Long, this "startled" defendant but he continued on to the office.

Inside the office, defendant was instructed to place his bags on the floor, and the agents placed empty bags alongside defendant's. Within two minutes a narcotics detecting dog was brought in and he alerted on defendant's overnight bag. Then the dog ran over and sniffed at defendant's back. Defendant was asked if he minded standing in a "lineup" with two agents and a police officer, and he replied, "No." The dog sniffed at an agent and an officer and then "jumped and put his paws" on defendant.

Thereafter, at the agent's request, defendant took off his coat. The agents observed that defendant's stomach was wrapped with an ace bandage. When asked to remove his shirt, he did so without complaint. The agents then saw a plastic bag, containing white powder, taped to defendant's back. A field test at the desk in the office was positive for cocaine. Defendant was then placed under arrest for possession of cocaine.

The trial court denied the defendant's motion to suppress the cocaine, finding that the agents had an articulable suspicion that the defendant was involved in criminal activity and therefore it was permissible to stop him. The court further found that the police procedure which followed the initial stop in the baggage area was reasonable under the circumstances. The court then found probable cause to conduct a search when the dog alerted the agents to the defendant's luggage and the defendant's person.

Defendant contends that the agents exceeded the bounds of an investigatory stop because they lacked articulable suspicion that he was committing a crime and that the character of the detention was unreasonable. We disagree.

■■ *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, make clear that intermediate forms of police response, short of traditional arrest and full scale search, may be employed under narrowly defined circumstances upon less than probable cause. As stated in *People v. Tate*, 657 P.2d 955 (Colo.1983):

"Three conditions, however, must exist before a person may be subjected to some form of intermediate intrusion, such as an investigatory stop or a limited search of his person: (1) there must be an articulable and specific basis in fact for suspecting that criminal activity has or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose".

And, as stated in *Florida v. Royer*, —— U.S. ——, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983):

"The predicate permitting seizures on suspicion short of probable cause is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."

■■■ In the context of encounters between drug enforcement agents and suspects at commercial airports, the court in *Florida v. Royer, supra*, went on to hold that when officers have a reasonable suspicion to believe that a suspect's luggage contains drugs, they may detain the suspect and his luggage for a brief period to carry out a dog sniffing procedure. In such event, a negative response would result in the expedient release of the suspect; a positive result would give rise to arrest

on probable cause. *Florida v. Royer, supra.* Moreover, a trained dog's sniffing of luggage is not a Fourth Amendment search. *U.S. v. Place,* —— U.S. ——, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

Under the circumstances here, we conclude that there existed an articulable and specific basis in fact for suspecting that the defendant possessed illegal drugs or narcotics. *See People v. Tate, supra.* The agents had background information and material concerning this defendant's illicit transportation of controlled substances from Miami to Denver. Information obtained from a confidential informant proved reliable concerning the defendant's arrival in Denver from Miami on the evening in question. When he arrived at Stapleton International Airport, the defendant conducted himself in a suspicious manner, including proceeding to the baggage carousel by an indirect route and making a statement implying that his bag contained something of inordinate value.

We further conclude that the purpose of the intrusion was reasonable, *i.e.*, to investigate the suspected criminal activity of the defendant. *People v. Tate, supra.*

Finally, we conclude that the scope and character of the intrusion in this case was reasonably related to its purpose. *Florida v. Royer, supra; see People v. Tate, supra.* The agents had knowledge that the defendant owned a .340 Barretta automatic pistol. The initial contact was in the baggage area of a busy international airport. Removing the defendant to the agent's office assured the safety of the public and the agents and allowed the expeditious conduct of the dog sniffing procedure. The entire process was accomplished in a mere matter of minutes.

When the dog reacted to the defendant's luggage and to the defendant's person, probable cause then existed to arrest defendant and conduct a search of the defendant's luggage and person, incident to arrest. Thus, we discern no violation of the defendant's constitutional rights concerning search and seizure.

Judgment affirmed.

VAN CISE, J., concurs.

PIERCE, J., dissents.

PIERCE, Judge, dissenting:

I dissent on the ground that I consider the police actions exceeded the bounds of a legitimate investigatory stop. *People v. Stone,* 174 Colo. 504, 485 P.2d 495 (1971); *see* § 16–3–103, C.R.S.1973 (1978 Repl.Vol. 8). Here, the only pertinent information the narcotics agents had at the time of this stop consisted of vague reports that defendant had been involved in the narcotics trade, that he owned a firearm, and that he would be arriving on a particular plane. None of his actions upon arriving at the airport were so unusual as to set him apart from other individuals under the same circumstances. While the observation of a bulge under his coat and the reactions of the dog may have provided a basis for further inquiry, these factors did not come into play until after the initial seizure, and thus, cannot provide justification for the initial stop. *See People v. Thomas,* 660 P.2d 1272 (Colo.1983).

Here, I am unable to find an "articulable and specific basis in fact for suspecting that criminal activity has or is about to take place." *People v. Tate,* 657 P.2d 955 (Colo.1983).

The trial court ruled that there was no consent given here. I would not disturb this finding. Therefore, I agree with the trial court that *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), is distinguishable.

I would reverse and remand for a new trial.