The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

David P. SULLIVAN,
Defendant-Appellant.

No. 82CA1497.

Colorado Court of Appeals,
Div. II.

March 15, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey, First Asst. Atty. Gen., Denver, for plaintiff-appellee.

Steven R. Newell, P.C., Steven R. Newell, Steven P. Martens, Denver, for defendant-appellant.

BABCOCK, Judge.

Defendant, David P. Sullivan, appeals the judgment of conviction for possession of a controlled substance (marijuana concentrate) following trial to the court. We affirm.

The facts are undisputed. On August 31, 1981, Officer Galusha of the Longmont Police Department received a tip from a confidential informant. The informant told Galusha that David P. Sullivan would ar-

rive at Stapleton International Airport in Denver on September 1, 1981, on a United Airlines flight from Seattle, Washington, at approximately 10:30 a.m., where he was to meet Ray Hightower. Sullivan was described by the informant as being 5'6" tall with dark hair, wearing a three-piece suit, and carrying a flight bag. Galusha was told that Sullivan had been arrested at the airport in Fort Lauderdale, Florida, for trafficking controlled substances, but was free on bond pending charges in that state. The informant told Galusha that Sullivan would be carrying approximately one pound of hashish or marijuana concentrate in a flight bag, or on his person, and was planning to discuss the sale of this controlled substance with Ray Hightower. Ray Hightower was an individual personally known to Galusha.

Galusha testified that during the summer of 1981, this confidential informant had provided reliable information on several occasions regarding illicit dealings in controlled substances. He testified that the informant's information had led to the purchase of controlled substances by police officers under his personal direction, and had resulted in arrests of the suspects and seizure of the controlled substances.

Galusha reported this tip to others, and the next day at approximately 9:30 a.m., met an agent of the Drug Enforcement Administration and Detective Costigan of the Denver Police Department at Stapleton International Airport, there informing them of the details of the tip.

Costigan verified with United Airlines that David P. Sullivan would arrive from Seattle, Washington, on Flight 694 at 10:35 a.m. on that date. Having verified this information, Costigan then arranged to have present dogs specially trained to sniff out and detect controlled substances in closed containers.

The disembarkation area for Flight 694 was placed under surveillance. When the passengers deplaned and an individual matching Sullivan's description carrying a small black piece of luggage contacted Ray Hightower, Galusha signaled the other members of the surveillance team.

The officers followed Sullivan and Hightower as they walked from the concourse to the lower level and past the baggage carousel. When Sullivan failed to retrieve any baggage from the carousel, and approached the exit from the terminal building, Costigan approached and asked Sullivan for his name and identification. Although Sullivan complied with the request, Costigan testified that he appeared nervous and became visibly shaken when told that the detective believed he was carrying a controlled substance. When Sullivan denied his previous arrest, Costigan decided to detain him for the dog sniff procedure. Sullivan was then taken to the DEA office at the airport, over his express objection, where the dogs identified Sullivan's flight bag as containing a controlled substance.

Costigan took Sullivan to the Denver Police Department where he was held until a search warrant was obtained. The search of Sullivan's bag produced approximately 450 grams of marijuana concentrate. Sullivan was then formally arrested and a search of his person produced $3,500 in cash.

Sullivan moved to suppress the contraband and cash upon the ground that no probable cause existed for his arrest and thus its seizure was the fruit of an illegal arrest. The trial court denied the motion, concluding that Sullivan's detention constituted a temporary and valid investigatory stop, based upon an articulable suspicion, for a valid purpose, and that its nature and scope were reasonable under the circumstances. *See People v. Elliott,* 675 P.2d 326 (Colo.App.1983).

■ Although the trial court did not enter conclusions of law concerning probable cause for warrantless arrest, we can make an independent determination of this issue because the facts are not disputed on appeal and the evidence is before us. *People v. Magoon,* 645 P.2d 286 (Colo.App.1982).

In determining the existence of probable cause we apply the totality of the circum-

stances test enunciated in *Illinois v. Gates*, — U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted by this court in *People v. Gallegos*, (Colo.App. No. 81CA1228 ann'd November 10, 1983).[1] In so doing, we consider the interrelationship of the informant's "veracity," "reliability," and "basis of knowledge," measured by the officer's corroboration of the information and the detail of the information conveyed. *Illinois v. Gates, supra.*

█ Here, Galusha testified that the informant had provided reliable information in controlled substance trafficking on several occasions during the summer of 1981, leading to the purchase of controlled substances by officers under his direction and the arrest of suspects and seizure of controlled substances. We conclude that this information constitutes a sufficient basis to establish the informant's veracity. *People v. Dailey*, 639 P.2d 1068 (Colo.1982).

█ When the manner in which the information was gathered and its source is not specified by the informant, a tip must describe the criminal activity in sufficient detail to allow the court reasonably to conclude that the informant obtained the information in a reliable manner. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *People v. Williams*, 189 Colo. 311, 541 P.2d 76 (1975); *DeLaCruz v. People*, 177 Colo. 46, 492 P.2d 627 (1972).

█ In this case, the informant advised Galusha of Sullivan's full name, including his middle initial, and that he would be arriving at Stapleton International Airport on September 1, 1981, on a United Airlines flight from Seattle, Washington at 10:30 a.m. The informant also identified specifically an individual known to Galusha who would be contacted by Sullivan at the airport. Sullivan's description was specific in that he was identified as short, approximately 5'6" in height, with dark hair, a very sharp dresser in a three-piece suit, and carrying a flight bag. The informant also advised Galusha of Sullivan's previous arrest in Fort Lauderdale, Florida, for similar criminal activity. Because the informant's tip was replete with detail, we conclude that it could not have been the product of casual rumor; rather, the informant obtained this information in a reliable manner. *People v. Williams, supra.*

Moreover, all of the details of the informant's tip, except the Florida arrest, were verified at Stapleton International Airport before the officers contacted Sullivan. Corroboration of these details through independent sources and by the officers' observations is significant in determining that there existed a basis of knowledge for the informant's hearsay information. *Illinois v. Gates, supra; Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *People v. Williams, supra.* Having personally verified the information received from the informant prior to contacting Sullivan, the officers had reasonable grounds to believe that Sullivan possessed the contraband. *Draper v. United States, supra.*

We conclude under the totality of the circumstances of this case that probable cause for arrest was present when the officers first contacted Sullivan at Stapleton International Airport. There being probable cause for Sullivan's arrest, the search of his flight bag was justified as a search incident to a valid arrest and pursuant to a valid warrant. Likewise, the search of his person was justified as incident to a valid arrest. Therefore, the trial court did not err in denying Sullivan's motion to suppress.

Judgment affirmed.

· BERMAN and VAN CISE, JJ., concur.

---

1. The "tip" here might well survive rigid application of the "two-pronged test" that developed following *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).