**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Troy Roger CAGLE, Defendant-Appellee.**

**No. 84SA50.**

Supreme Court of Colorado, En Banc.

Sept. 24, 1984.

Robert R. Gallagher, Jr., Dist. Atty., Catherine DiSante, Deputy Dist. Atty., Littleton, for plaintiff-appellant.

Bruce B. Lassman, Lassman & Williams, P.C., Castle Rock, for defendant-appellee.

DUBOFSKY, Justice.

The People appeal a ruling of the Arapahoe County District Court suppressing evidence seized from the defendant, Troy Roger Cagle, and the defendant's statement to police officers. We vacate the ruling of the district court and remand this case for additional findings.

On June 19, 1983, Greenwood Village Police Officer Patrick Cillo, on patrol in his police car, began following the defendant's automobile because he believed that its presence in the area was suspicious. After observing the defendant change lanes with-

out signaling, Officer Cillo turned on his overhead lights to signal the defendant to stop. The officer then noticed the defendant's passenger bend down in his seat and remain in that position until just before the defendant turned a corner and pulled over. The defendant, who got out of his automobile and approached Officer Cillo, was unable to produce a driver's license and gave a false name.[1] The officer recognized the defendant and knew that the defendant had falsely identified himself. Officer Cillo called for back-up assistance and ordered the defendant's passenger out of the car. As the passenger opened the car door the officer noticed a bottle of whiskey in the car. The officer was aware that neither the defendant nor his passenger was twenty-one years of age or older.

Officer Cillo then checked under the passenger's seat in the defendant's car and discovered a shirt crammed under the seat. As he pulled the shirt out, a plastic bag containing mushrooms fell to the floor. After finding the mushrooms, Officer Cillo placed the defendant and the passenger under arrest. The officer advised the defendant of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the defendant stated that the plastic bags contained hallucinogenic mushrooms.

The defendant was charged with possession of psilocybin, a controlled substance, in violation of section 18–18–105, 8 C.R.S. (1983 Supp.).[2] Before trial, the defendant moved to suppress the evidence found in his car and his statement to Officer Cillo. The district court granted the motion, ruling that although the officer had probable cause to stop the defendant, he did not have reasonable suspicion to search the defendant's car for a weapon.[3] The court held that the defendant's statement was

the fruit of an illegal search. The People appeal under C.A.R. 4.1 which authorizes the People to bring before this court interlocutory appeals of fourth amendment suppression rulings.

The People contend that the district court erred in suppressing the evidence, relying on two exceptions to the general requirement that police officers obtain warrants before searching private property. The People seek to apply the automobile search incident to an arrest exception of *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) and *People v. Henry*, 631 P.2d 1122 (Colo.1981), and the investigatory stop exception of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), as applied to automobile searches by the United States Supreme Court in *Michigan v. Long*, —— U.S. ——, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). We agree that the rule of *Long* may be applicable here and remand the case for appropriate factual findings.

I.

The People argue that Officer Cillo's search of the defendant's automobile may be upheld as a search incident to an arrest, relying on the district court's finding that the officer "had probable cause" to stop the defendant. The People assert that Officer Cillo had probable cause to arrest the defendant for changing lanes without signaling,[4] failure to produce a driver's license,[5] possession of liquor by a minor,[6] and criminal impersonation.[7] The defendant argues that, regardless of the existence of probable cause, there can be no search incident to an arrest unless there is an arrest. Officer Cillo did not arrest the defendant until after the search at issue.

---

1. The defendant, Troy Cagle, gave the officer the name of his older brother, Bennie Cagle.

2. Psilocybin is a controlled substance. Section 12–22–309(2)(a)(XV), 5 C.R.S. (1983 Supp.).

3. The court stated that both occupants "were clear of the automobile and Officer Cillo was not in any zone of danger."

4. § 42–4–803, 17 C.R.S. (1973 & 1983 Supp.).

5. § 42–2–113, 17 C.R.S. (1983 Supp.).

6. § 12–47–128(1)(c), 5 C.R.S. (1978).

7. § 18–5–113, 8 C.R.S. (1978).

■ The automobile search incident to an arrest doctrine of *Belton* and *Henry* was designed to respond to exigencies when police arrest suspects who may be dangerous. Protection for police from dangerous suspects who have not been arrested is addressed by the investigatory stop doctrine of *Terry,* applied by this court in *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971) and *People v. Tate,* 657 P.2d 955 (Colo.1983), and recently applied to automobile searches by the United States Supreme Court in *Long.* We believe that the rule of *Terry, Stone* and *Tate,* as applied in *Long,* adequately covers the situation where an officer has probable cause to arrest a suspect but chooses not to do so. We therefore choose not to apply the search incident to an arrest doctrine to the instant case.[8]

### II.

■ With less than probable cause for arrest, a police officer may constitutionally conduct an investigatory stop, and a limited search of the person for weapons, only if three requirements are met:

(1) there must be an articulable and specific basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose.

*Tate,* 657 P.2d at 958; *see also, Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *People v. Thomas,* 660 P.2d 1272 (Colo.1983); *Stone,* 174 Colo. 504, 485 P.2d 495.[9] Recently, in *Long,* the United States Supreme Court held that a weapons search accompanying an investigatory stop may extend to the passenger compartment of an automobile,

limited to those areas in which a weapon may be placed or hidden ... if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. [Citation and footnote omitted.]

103 S.Ct. at 3480. The validity of the stop and search of the passenger compartment in this case is thus governed by the standards enunciated in *Tate* and *Long.*

■ The district court found that Officer Cillo had "probable cause" to make the stop. We construe this finding as a determination that the first condition for an investigatory stop and search—that it be justified by a reasonable suspicion of criminal activity—has been met for the purposes of this appeal.[10] The district court held, however, that Officer Cillo's search of the defendant's car was improper because it violated the third condition of *Tate.* The court saw "no indication or even reasonable suspicion that there would have been a weapon in the car." Therefore, the court found, the scope and character of the stop and search were not reasonably related to its purpose. The court made no findings as to the second requirement of *Tate.* We disagree with the district court's conclusion concerning the scope and character of the search but remand this case for a determination as to the second requirement of

---

8. The United States Supreme Court expressly left open the question of whether a search incident to an arrest may be conducted where there is probable cause to arrest a suspect but an actual arrest has not been made. *Michigan v. Long,* — U.S. ——, 103 S.Ct. 3469, 3473 n. 1, 77 L.Ed.2d 1201 (1983).

9. Under the first requirement, the articulable and specific basis for the stop need not include an articulable and specific basis for the search prior to the stop; the basis for the search may develop in the course of the stop. *People v. Burley,* 185 Colo. 224, 226–27, 523 P.2d 981, 982

(1974) (sufficient cause for weapons search arose when suspect repeatedly reached under car seat after traffic stop). Both the stop and subsequent search are encompassed within the "intrusion" language of the second and third requirements.

10. C.A.R. 4.1 authorizes only the People to bring interlocutory appeals of district court suppression rulings. The defendant, therefore, could not appeal the district court's probable cause finding at this stage.

*Tate:* whether the purpose of the *search* was reasonable.[11]

### A.

■ Although evidence discovered in the course of a lawful search for weapons will not be suppressed, *Tate,* 657 P.2d 955, the investigatory stop doctrine does not authorize police officers generally to conduct warrantless automobile searches whenever they conduct an investigatory stop. *Long,* 103 S.Ct. at 3480 n. 14. Under *Long* a search of the passenger compartment of a suspect's car during an investigatory stop is permitted only if police reasonably believe the suspect to be potentially dangerous. *United States v. Stoecker,* 17 M.J. 158 (C.M.A.1984). We cannot determine from this record whether the officer's purpose in entering the vehicle was to make a protective search. We therefore remand this case for a determination as to the second element of the *Tate* test: whether the purpose of the search was reasonable.

■ The second condition of *Tate* requires a two-fold inquiry: the court must first determine the officer's actual purpose in making the search, and then determine whether this purpose was reasonable. Where an officer conducts an investigatory stop, an accompanying search upon less than probable cause is permissible solely for the purpose of discovering weapons. *Long,* 103 S.Ct. at 3480 n. 14; *Terry,* 392 U.S. at 24, 88 S.Ct. at 1881; *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968). The officer must in fact entertain this purpose *at the time of the search;* the delicate balance that the rule of *Terry* strikes between the officer's

protection and the suspect's privacy would be skewed if an officer were permitted to search for evidence and rationalize it only after the fact as a search for weapons. *See People v. Casias,* 193 Colo. 66, 75, 563 P.2d 926, 933 (1977) (condemning "the nominal weapons search which, on the facts, can only have been aimed at procuring evidence."). The court's inquiry into the purpose of the intrusion, therefore, begins with the officer's declarations as to his intention at the time of the search; evidence of the officer's intention is relevant to the reasonableness of purpose issue. The court also must examine the objective circumstances surrounding the search in order to arrive at its own factual determination of the officer's purpose; only then may the court consider whether the purpose was reasonable.[12] *People v. Lewis,* 659 P.2d 676 (Colo.1983).

At the district court hearing, Officer Cillo testified that he conducted the search of the defendant's car because he believed that the passenger might have bent over to hide a weapon under his seat. The officer, however, could not remember whether he conducted pat-down searches of the defendant and the passenger and did not testify that he waited for the arrival of back-up officers before searching the car. The picture emerges of a single officer turning his back on two possibly armed suspects to search under the passenger seat of an automobile. The defendant contends that Officer Cillo would not have engaged in such conduct had he believed the defendant or the passenger to be dangerous. Under these circumstances we consider it appropriate to remand this case to the district court for additional taking of evidence, if

---

11. The record leaves no doubt that the purpose of the *stop*—conducted in order to investigate a traffic infraction—was reasonable.

12. The United States Supreme Court, in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), eschewed inquiry into an officer's motives in conducting a search incident to an arrest, holding that "[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment;

that intrusion being lawful, a search incident to the arrest requires no additional justification." *Id.* at 461, 101 S.Ct. at 2864. In contrast, the Court in *Long* did not adopt a purely objective test in the context of investigatory stops. The rule of *Long* is limited to situations where officers reasonably believe that suspects are potentially dangerous. *Id.* 103 S.Ct. at 3480 n. 14; *but see People v. Tate,* 657 P.2d 955, 960 (Colo.1983) (Lohr, J., concurring).

necessary,[13] and factual findings as to the purpose of Officer Cillo's search.

### B.

The People assert that the scope and character of the instant search was related to its purpose and that the district court therefore erred in concluding that the third condition of *Tate* had not been met. Relying on *Long*, the People contend that Officer Cillo was justified in conducting a search of the passenger compartment because the facts of this case provide a specific and articulable basis for a belief that the defendant and passenger were potentially dangerous. Specifically, the People maintain that the search was justified by the passenger's conduct in bending down in his seat after the officer turned on his overhead lights, the length of time that it took the defendant to pull over after the officer signalled the defendant to stop,[14] and the fact that the defendant gave the officer a false name.

Assuming that it can be shown on remand that Officer Cillo's purpose in conducting the search was in fact to look for weapons, we believe that the scope and character of the search accorded with such a purpose. The passenger's furtive conduct in bending down in his seat after Officer Cillo turned on his overhead lights would have warranted a reasonable belief that the passenger had a weapon beneath his seat, thus justifying a weapons search in that area. *See United States v. Pajari*, 715 F.2d 1378 (8th Cir.1983). In the past we have not afforded great weight to ambiguous gestures of this type unless the circumstances or other information available to the officer invest the gesture with an ominous meaning. *People v. Goessl*, 186 Colo. 208, 526 P.2d 664 (1974). In *People v. Thomas*, 660 P.2d 1272 (Colo. 1983), this court held that a furtive gesture, by itself, is not a specific and articulable basis sufficient to justify an investigatory stop. Moreover, "[a] mere furtive gesture alone is often insufficient" to justify a weapons search following a legitimate stop. *Casias*, 193 Colo. at 76, 563 P.2d at 933; *cf. Cowdin v. People*, 176 Colo. 466, 491 P.2d 569 (1971) (furtive gesture cannot supply probable cause for warrantless automobile search in absence of other information furnishing basis for probable cause). In the present case, however, the passenger bent down *after* Officer Cillo signalled the automobile to stop; such a "reaction to the confrontation may take on more significance." *Casias*, 193 Colo. at 76, 563 P.2d at 933; *People v. Burley*, 185 Colo. 224, 226–27, 523 P.2d 981, 982 (1974) (weapons search permissible where defendant repeatedly reached beneath car seat after signal to stop). We conclude, therefore, that, because the circumstances thus gave meaning to the gesture in this case, the district court erred in ruling that there was no indication or reasonable suspicion that there was a weapon in the car. Officer Cillo's search of the passenger compartment of the defendant's car was thus within the proper scope of the stop and search.[15] We therefore vacate the ruling of the district court on this issue.

Ruling vacated and case remanded with directions.

---

**13.** The suppression hearings began on Friday, December 30, 1983. The court interrupted defense counsel's cross-examination of Officer Cillo, the only witness who had testified, and continued the matter until January 30, 1984. The court ruled on January 30 without taking further evidence.

**14.** The district court did not find that the defendant took an unreasonable time to stop after Officer Cillo turned on his overhead lights.

**15.** We do not consider whether the fact that a suspect provides a false name may contribute to a specific and articulable basis for a belief that the suspect is dangerous.