The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Eric JACKSON, Defendant–Appellee.

No. 97SA271.

Supreme Court of Colorado,
En Banc.

Nov. 3, 1997.

A. William Ritter, Jr., District Attorney, Second Judicial District, Nathan B. Coates, Chief Appellate Deputy District Attorney, Denver, for Plaintiff–Appellant.

The Law Office of Charles A. Agbakwu, Sr. & Associates, Charles A. Agbakwu, Sr., Clark D. Aguilera, Aurora, for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

In this interlocutory appeal the People seek to overturn the ruling of the Denver District Court suppressing "crack cocaine" seized from the person of the defendant, Eric Jackson, by Denver police officers on January 30, 1997. We find that the district court erred in granting the motion to suppress and we hold that the conduct of the police in the circumstances of this case in frisking the defendant, a passenger in a car stopped for traffic violations, was reasonable under Fourth Amendment principles. Accordingly, we reverse the order of the district court granting the defendant's motion to suppress and we remand this case to the district court for further proceedings.

I.

On January 30, 1997, at approximately 5:10 p.m., two Denver police officers on routine patrol in a marked police car observed a car with a headlight out, a cracked taillight, a cracked windshield, and a broken mirror, all in violation of traffic ordinances of the City and County of Denver. The driver and the defendant, seated in the front passenger seat, were the only occupants of the car. The officers signaled the car to stop by activating flashing lights and sirens. As the car began to stop, both officers observed the defendant reach into the back seat and pull a coat into the front seat and onto his lap. The

officers approached the car and requested a driver's license or other identification from the occupants. The driver did not have a driver's license or other identification. The defendant produced an identification card issued by Denver General Hospital with his name and date of birth. The officers did not ask the defendant to remove the coat from his lap, nor did they make any other request concerning the coat. The officers returned to the patrol car to determine whether any outstanding warrants existed for either occupant. Computer checks revealed that there were no outstanding warrants for either the driver or the defendant. One officer approached the driver, asked him to step out of the car, and conducted a pat-down search which produced no evidence. The other officer requested the defendant to exit the vehicle and conducted a pat-down search of the defendant. During the search of defendant's legs, a plastic baggie containing a white substance fell out of the defendant's pant leg. The officer suspected the substance to be crack cocaine and placed the defendant under arrest. The driver denied knowing anything about the cocaine. Upon questioning, the defendant stated, "It's mine."

The district court determined that the traffic stop was valid and that probable cause existed to arrest the driver for traffic infractions and for driving without a license. The district court found that there was a ten to fifteen minute interval between the initial stop of the car and the time of the pat-down search that uncovered the crack cocaine. Further, the court found that at the time of the pat-down search there were no facts known to the officers to justify an arrest of the defendant, although both officers had "a concern for their safety and that this was the primary motivating factor to pat down the defendant." The court determined that the defendant made a suspicious gesture when he placed the coat on his lap, but that as a matter of law this gesture was insufficient to justify a patdown search of the defendant under Fourth Amendment principles. The court granted the defendant's motion to suppress the crack cocaine.

## II.

The People contend that the district court erred in ruling that the pat-down search of the defendant was unreasonable under the specific circumstances of this case.

Colorado jurisprudence concerning standards for determining the validity of an investigatory stop or a limited search of a suspect for weapons when a police officer does not possess probable cause to arrest is well-settled:

> Three conditions must exist before a person may be subjected to some form of intermediate intrusion, such as an investigatory stop or a limited search of his person: (1) there must be an articulable and specific basis in fact for suspecting that criminal activity has or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose.

*People v. Tate*, 657 P.2d 955, 958 (Colo.1983). Because a stop and frisk are less intrusive than an arrest, a police officer may conduct an investigatory stop and a limited search of a person for weapons with less than probable cause for an arrest. See *People v. Weston*, 869 P.2d 1293, 1296 (Colo.1994).

When an officer believes that an individual may be armed and potentially dangerous, then the officer may conduct a pat-down search of the person for weapons. See *People v. Corpany*, 859 P.2d 865, 869 (Colo. 1993). Roadside encounters between a police officer and the occupants of an automobile present "particular hazards" that may give rise to a need to conduct a weapons search. *People v. Melgosa*, 753 P.2d 221, 225 (Colo. 1988). However, not all traffic stops call for a search. See *Weston*, 869 P.2d at 1297. Something "more than a traffic violation" must be involved. *People v. Sutherland*, 886 P.2d 681, 686 (Colo. 1994). A limited weapons search may be necessary during a traffic stop if a police officer possesses an objectively reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and may gain immediate control of weapons." *People v. Cagle*,

688 P.2d 718, 721 (Colo.1984). We have held that furtive gestures by the occupants of a vehicle in response to a police officer's initiation of a confrontation may give rise to such a belief. See *id.* at 723 (stating that a weapons search of area under passenger's seat was proper when the passenger leaned over after the officer activated lights and sirens to signal the automobile to stop). Under such circumstances, it may be necessary for a police officer to order a driver or passenger out of the vehicle during an investigatory stop, see *Melgosa*, 753 P.2d at 224, search the passenger compartment of the vehicle for weapons, see *id.*, and frisk the driver and the passenger for weapons, see *Sutherland*, 886 P.2d at 686, provided that these intrusions satisfy the three-part test articulated in *Tate*.

### III.

Applying these principles to this case, the record reflects that the officers observed the driver of the car committing various traffic infractions. Thus, the officers possessed an articulable and specific basis to suspect that a crime had occurred, satisfying the first requirement of *Tate*.

■ Turning to the second prong of *Tate*, which requires that the purpose of the intrusion be reasonable, the officers in this case testified that they conducted the pat-down search of the defendant because they were concerned for their safety. The district court found the defendant's action of retrieving a coat from the back seat and placing it on his lap was not sufficient to give rise to an objectively reasonable belief that the officers' safety was an issue, and that the officers were not authorized to conduct a pat-down search of the defendant. However, under the facts of this particular case, the district court's conclusion is inconsistent with our previous holdings that a furtive gesture by the driver or a passenger of an automobile may give rise to an objectively reasonable belief that the officers may be in danger. See *People v. Altman*, 938 P.2d 142, 146 (Colo.1997) (weapons search reasonable when defendant bent over and made motions toward bottom of seat); *People v. Corpany*, 859 P.2d 865, 870 (Colo.1993) (weapons search reasonable when passengers leaned over and

placed something below seat); *Melgosa*, 753 P.2d at 227 (weapons search proper when passenger placed object under seat in response to police stop); *Cagle*, 688 P.2d at 723 (weapons search proper when passenger leaned over after officer activated overhead lights to signal automobile to stop). In our view, the defendant's action of pulling his coat into the front seat and placing it on his lap in response to the officers' activation of lights and sirens is sufficiently analogous to the facts of these previous holdings. Therefore, the district court erred by failing to recognize the potential danger inherent in the defendant's actions.

■ Additionally, the reasonableness of the purpose of the search in this case requires consideration of the sequence of events. The pat-down search of the defendant took place some ten to fifteen minutes after the initial stop of the car and after both officers observed the defendant place the coat in his lap. This frisk occurred after the officers returned from their patrol car and after they determined there were no outstanding warrants for either the driver or the defendant. Other courts have held frisks to be unlawful when, in the interval between the stop and the frisk, police discover additional facts that dissipate the need for the forcible stop. See 4 Wayne R. LaFave, *Search and Seizure* 9.5(a), at 246–70 & n. 14 (3d ed. 1996 & Supp.1998). We recognize that a delayed frisk may upset the delicate balance between the need for the officer's protection and a detained citizen's right to privacy. A delayed frisk may provide an opportunity for a search for evidence that is rationalized only after the fact as a search for weapons. See *Cagle*, 688 P.2d at 721; *People v. Casias*, 193 Colo. 66, 75, 563 P.2d 926, 933 (1977) (condemning a "nominal weapons search which, on the facts, can only have been aimed at procuring evidence"). However, under the facts of this case, the trial court found specifically that at the time of the pat down of the defendant, the officer was concerned for his safety. Hence, we conclude that the purpose of the pat-down search of the defendant in this case was reasonable.

The third prong of *Tate* requires a determination of whether the scope and character

of the intrusion were reasonably related to its purpose. The officers conducted a brief, minimally intrusive pat-down search of the defendant for the purpose of ascertaining whether the defendant carried any weapons. The scope and character of the search were reasonably related to the purpose of ascertaining whether the defendant was armed.

### IV.

We hold that the gesture by the defendant, occurring after police intervention, constituted a justifiable basis for the police to engage in a limited, protective search for weapons on the person of the defendant. We hold that the delayed pat-down search of the defendant for weapons was justified under the specific facts of this case because at the time of the frisk the officers possessed an objectively reasonable concern for their safety. Accordingly, we hold that under the totality of the circumstances, the officer's pat-down search of the defendant represented a limited intrusion on the right of privacy of the defendant permissible under Fourth Amendment principles. We therefore reverse the order of the district court granting the defendant's motion to suppress and we remand this case to the district court for further proceedings.